UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CATALIN M. NICOLESCU, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-1538-RLY-TAB |
| | ) | |
| MICHAEL R. MORRIS, | ) | |
|     Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On March 11, 2006, Plaintiff, Catalin M. Nicolescu ("Plaintiff"), was arrested by Indiana State Trooper Michael R. Morris ("Officer Morris"), for operating a motor vehicle while intoxicated. On October 19, 2006, Plaintiff filed the instant lawsuit against Officer Morris, alleging: (1) that Officer Morris violated his Fourth Amendment right to be free from unreasonable seizures, and (2) that Officer Morris committed the state law torts of false arrest, false imprisonment, malicious prosecution, negligence, and intentional infliction of emotional distress. Officer Morris now moves for summary judgment on all of Plaintiff's claims. For the reasons explained in the opinion below, the court **GRANTS** Officer Morris' motion.

**I.     Material Facts**

1.  Plaintiff was born in Romania, came to the United States in the year 2000, and obtained U.S. citizenship on March 9, 2006. (Deposition of Catalin M. Nicolescu ("Plaintiff Dep.") at 5, 8, 10, 11).

1

2. Plaintiff is literate in the English language. (*Id*. at 3).

3. On March 11, 2006, Plaintiff went to Expo Bowling with his next-door neighbor, Bobby Jarvis ("Bobby"), and their teen-aged sons. A female friend named Kathy, also from Romania, and her teen-aged son met up with them at the bowling alley. (*Id*. at 20).

4. At Expo Bowling, Plaintiff, Bobby, and Kathy split one pitcher of beer, which amounted to one glass of beer per person. (*Id*. at 23).

5. After dinner, Plaintiff, Bobby, Kathy, and their sons drove to RJ Wingers, near I-465 East and Washington Street, where they ate a dinner of buffalo wings. (*Id*. at 26). They remained at the restaurant for approximately one and one-half hours. (*Id*.).

6. While there, Plaintiff drank one bottle of Bud Select. (*Id*. at 27).

7. After dinner, Plaintiff drove the boys home in Bobby's car because Bobby, who was riding with Kathy, did not know the way to their neighborhood. (*Id*. at 28).

8. Bobby testified that at no time that evening did Plaintiff show any signs of intoxication. (Declaration of Lt. Col. Bobby Jarvis ("Jarvis Dec."), Ex. A).

9. From the restaurant, Plaintiff drove on Interstate 465 to Mt. Comfort Road, County Road 600, and then into his neighborhood subdivision until he arrived at his neighbor's home. (*Id*. at 29-30).

10. Officer Morris was on duty that evening traveling south on Mt. Comfort Road in his semi-marked police vehicle. (Deposition of Officer Morris ("Morris Dep.") at

21).

11. Officer Morris testified that Plaintiff was traveling on Mt. Comfort Road at 69 miles per hour ("m.p.h.") – 19 miles per hour over the speed limit of 50 m.p.h. (Morris Dep. at 21; Plaintiff Dep. at 30-31).

12. Plaintiff testified that he "always" checks the speedometer, and that he was driving approximately 52 or 53 m.p.h. on Mt. Comfort Road. (Plaintiff Dep. at 31). Plaintiff further testified that he was traveling at approximately 35 or 40 m.p.h. on County Road 600, which had a posted speed limit of 50 m.p.h., and was traveling at 25 m.p.h. in his neighborhood, which had a posted speed limit of 20 m.p.h. (*Id.* at 31-33).

13. Officer Morris testified that he activated his lights in an attempt to stop the vehicle and pursued the vehicle with his lights flashing the entire way to Plaintiff's and Bobby's neighborhood subdivision. (Morris Dep. at 22).

14. Plaintiff testified that he never observed a police vehicle pursuing him with flashing red and blue lights until he reached Bobby's driveway. (Plaintiff Dep. at 33).

15. The boys exited the vehicle, and Officer Morris approached the vehicle with Plaintiff remaining on the driver's side. (Plaintiff Dep. at 33-34).

16. In response to Officer Morris' request, Plaintiff showed him his driver's license. (*Id.* at 35-36).

17. Officer Morris informed Plaintiff that he was "driving like a maniac," and ordered

Plaintiff out of the vehicle.  (*Id*. at 35).

18. At some point, Plaintiff said to Officer Morris, "I'm at home" and "Treat me like a man."  (Morris Dep. at 24; Plaintiff Dep. at 36, 37).

19. Officer Morris testified that Plaintiff exhibited the common signs of intoxication, such as glassy, bloodshot eyes, a strong odor of alcohol, and a dazed facial appearance.  (Morris Dep. at 25).

20. Bobby was also in the driveway at this time and attempted to interact with Officer Morris, but Officer Morris told him to stay near the garage.  (*Id*. at 25; Plaintiff Dep. at 39).

21. Officer Morris asked Plaintiff to step out of the vehicle and Plaintiff complied, but his balance was unsteady when he exited.  (Morris Dep. at 25, 50).

22. Officer Morris testified that the presence of Plaintiff and Bobby in the driveway, the two boys exiting the vehicle, and Plaintiff's statements to him to "treat him like a man" caused him concern, so he handcuffed Plaintiff and placed him in the back of his vehicle for officer safety.  (Morris Dep. at 25, 26, and 28).

23. Officer Morris advised Plaintiff of Indiana's Implied Consent law and the penalty for not submitting to a chemical test.  (*Id*. at 28, 29; Plaintiff Dep. at 40).

24. Plaintiff stated that if he took a chemical test, he could either "lose everything" or "lose his job."  (Morris Dep. at 28, 29; Plaintiff Dep. at 41).

25. Plaintiff ultimately did agree to take a blood-alcohol test.  Officer Morris then administered the test on a portable breath test ("PBT") device.  (Morris Dep. at 28,

4

29; Plaintiff Dep. at 38).

26. Plaintiff blew into the PBT machine and it registered; however, the exact reading is in dispute. On Officer Morris' Probable Cause Affidavit and on the Uniform Traffic Ticket ("UTT"), he wrote that the PBT showed a blood-alcohol content ("BAC") of .012. (Morris Dep. Exs. 2, 3). On Officer Morris' Supplemental Probable Cause Affidavit, he wrote that the PBT recorded a BAC of .12. (Morris Dep. Ex. 5).

27. Officer Morris subsequently transported Plaintiff to the county jail to conduct a field sobriety test. (*Id*. at 32, 33, and 66).

28. The videotape of the field sobriety test shows Plaintiff having some trouble understanding Officer Morris' instructions. Officer Morris first asked Plaintiff to perform the one legged stand test, which consisted of Plaintiff raising his right leg and counting to thirty. Plaintiff initially dropped his leg, but did, on his second try, complete the test. Officer Morris also asked Plaintiff to perform the walk and turn test, the finger to nose test, and the finger count test. It is Officer Morris' contention that Plaintiff failed the one legged stand test and the walk and turn test. It is Plaintiff's contention that he completed each test successfully. (*See* Defendant's Ex. 3).

29. Officer Morris asked Plaintiff to submit to a certified breath test and instructed Plaintiff that in order for the test to get a valid reading, he had to blow steadily into the machine for twenty or twenty-five seconds. (*Id*.).

30. Officer Morris informed Plaintiff that he could refuse to take the test, but that it would result in the suspension of his driving privileges. (*Id.*).

31. The first time Plaintiff blew into the machine, it issued an evidence ticket that read "Insufficient Sample." Officer Morris asked Plaintiff, "Are you going to take the test or not?" Plaintiff responded, "What is going to happen to me? Cause you know it's gonna be positive. I know I had some drinks." (*Id.*).

32. After this exchange, Officer Morris informed Plaintiff that if all he had was three beers, he would likely not test over the legal limit. (*Id.*).

33. The second time Plaintiff blew into the machine, Officer Morris yelled at Plaintiff to blow into the machine numerous times. The machine then issued an evidence ticket that read "Invalid." (*Id.*).

34. Officer Morris informed Plaintiff that he was not putting forth a good faith effort because "[h]e was sucking on the tube rather than blowing." (Morris Dep. at 35).

35. Plaintiff ultimately refused to take the test a third time. Plaintiff also refused to take a blood test at the local hospital. (*Id.* at 36-37).

36. Officer Morris then placed Plaintiff under arrest. (*Id.*).

37. Plaintiff served his Indiana Tort Claim Notice on August 1, 2006, for the incident and that notice was acknowledged as received by the Indiana Attorney General's Office on August 4, 2006. (Defendant's Ex. 4).

38. The Indiana Attorney General's Office did not issue a denial of Plaintiff's notice/claim before Plaintiff filed the instant action. (Defendant's Ex. 5).

39.     Plaintiff filed the instant action before ninety days had elapsed from the time he submitted his Indiana Tort Claim Notice. (Defendant's Ex. 4).

## II.     Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. *See Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003). The moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party may not, however, simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at 322)).

**III.   Discussion**

    **A.   Section 1983 and Qualified Immunity**

Plaintiff's first claim for relief is his claim under 42 U.S.C. § 1983 ("Section 1983") for the deprivation of his Fourth Amendment rights "to be free from unreasonable seizure by falsely arresting and [sic] him without probable cause."  (Complaint ¶ 27).

Section 1983 creates a federal cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States" by a person acting under color of state law.  To prevail in a Section 1983 action, Plaintiff must establish that: (1) he had a constitutionally protected right, (2) he was deprived of that right in violation of the Constitution, and (3) the defendant(s), acting under color of state law, intentionally caused that deprivation.  *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993); *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir. 1990).

"Probable cause to arrest is an absolute defense to any claim against police officers under § 1983 for wrongful arrest."  *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007);  *Booker v.Ward*, 94 F.3d 1052 (7th Cir. 1996); *Schertz v. Waupaca Co.*, 875 F.2d 578, 582 (7th Cir. 1989);  *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985). A law enforcement officer has probable cause to arrest an individual "when the facts and circumstances within [his] knowledge and of which [he] [has] reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense."  *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (citations omitted).  To determine whether probable cause exists, the court

must evaluate the facts "not as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer* – seeing what he saw, hearing what he heard." *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis in original). Although the question of probable cause is typically reserved for a jury, probable cause may be found as a matter of law "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sheik-Abdi*, 37 F.3d at 1246.

Officer Morris contends he initially began his pursuit of Plaintiff on Mt. Comfort Road because Plaintiff was traveling at 69 m.p.h. – well over the posted speed limit. In Plaintiff's Response Brief, he denies that he was speeding. Thus, Plaintiff contends, Officer Morris did not have reasonable suspicion to stop him for speeding.

Whether or not Officer Morris had reasonable suspicion to stop Plaintiff is irrelevant to his Section 1983 unlawful arrest claim, as the exclusionary rule does not apply in this civil rights case. *See Reich v. Minnicus*, 886 F.Supp. 674, 681-82 (S.D. Ind. 1993) (quoting *United States v. Leon*, 468 U.S. 897 (1984) ("Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'")). Thus, even if Officer Morris was not justified in stopping Plaintiff for speeding, that does not require the court to exclude all further evidence in support of Officer Morris' determination that he had probable cause to arrest for driving while intoxicated.

At any rate, Plaintiff did admit in his deposition to traveling over the speed limit while on Mt. Comfort Road and in his neighborhood. Although he admits to speeding only a few miles per hour over the speed limit, Officer Morris could lawfully stop him for the same. The court is not aware of any rule of law that provides that speeding only "a little bit" is an absolute defense to a charge of speeding.

Next, Plaintiff contends that Officer Morris did not have probable cause to seize him in the driveway. The evidence reflects that when Officer Morris approached Plaintiff in Bobby's vehicle, Plaintiff had glassy, bloodshot eyes, a strong odor of alcohol, and a dazed facial appearance. Upon asking Plaintiff to exit the vehicle, Officer Morris noticed that Plaintiff was unsteady on his feet. These facts are undisputed. Although Plaintiff and Bobby deny that Plaintiff was intoxicated, and the PBT results are in dispute, the evidence before Office Morris was sufficient for a reasonable officer to believe that Plaintiff was operating a vehicle while intoxicated. *See Qian v. Kautz*, 168 F.3d 949, 954 (7th Cir. 1999) (finding police officer had probable cause to arrest plaintiff for operating a motor vehicle while intoxicated where plaintiff wrecked his car, was unsteady on his feet, his speech seemed slurred, and the inside of the vehicle did not exhibit signs that his body had hit anything during the accident, even though plaintiff took the breathalyzer on the scene and blew 0.0%).

Finally, Plaintiff argues that Officer Morris lacked probable cause to arrest him for refusing to take the certified breath test. Plaintiff contends that he passed the field sobriety tests, and that he voluntarily submitted to the certified breath test twice. Only

upon learning that he would have to take it a third time did he refuse any additional testing. Plaintiff cites to the Indiana Administrative Code for the proposition that Officer Morris was required to offer him to either repeat the certified breath test or test Plaintiff on another device. However, Officer Morris did give Plaintiff the opportunity to submit to a blood test at the local hospital, and he refused. Thus, Officer Morris still maintained probable cause for Plaintiff's arrest, as Officer Morris' reasonable belief that Plaintiff was driving a vehicle while intoxicated was not dispelled by objective evidence.

Furthermore, prior to refusing any additional testing, Plaintiff stated, "What is going to happen to me? Cause you know it's gonna be positive. I know I had some drinks." (*See* Defendant's Ex. 3). Such statements could be interpreted by a reasonable law enforcement officer as incriminating.

The court finds that the facts and circumstances Officer Morris confronted on March 11, 2006, would lead a reasonable law enforcement officer to believe that Plaintiff was driving a vehicle while intoxicated. As such, Officer Morris had probable cause to arrest Plaintiff, and thus, Plaintiff did not suffer a deprivation of his Fourth Amendment rights. Plaintiff's Section 1983 claim therefore fails as a matter of law.

The court now turns to Officer Morris' defense of qualified immunity. In determining whether qualified immunity applies, the court employs a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, taking the facts in the light most favorable to the non-moving party, the court asks whether the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201. If so, the court must

11

determine "whether the right was clearly established" at the time of the alleged injury. *Id*. "[A] negative answer to the first question conclusively resolves the matter in favor of the defendant." *Sheik-Abdi*, 37 F.3d at 1249.

On the basis of the foregoing analysis, the court finds Plaintiff did not suffer a constitutional violation. Accordingly, the court must **GRANT** Officer Morris' motion for summary judgment on Plaintiff's Section 1983 claim for unlawful arrest.

### B. State Law Claims

Plaintiff also brings state law torts of false arrest, false imprisonment, malicious prosecution, negligence, and intentional infliction of emotional distress. Officer Morris seeks to dismiss these claims on grounds that Plaintiff failed to comply with the Indiana Tort Claims Act ("ITCA"). Having dismissed Plaintiff's only federal claim, the court elects to take supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, as they are factually intertwined with his federal claim and ruling on the same would promote judicial economy.

The ITCA bars a claim against a political subdivision unless notice is filed with: (1) the governing body of that political subdivision, and (2) the Indiana political subdivision risk management commission within 180 days after the loss occurs. Ind. Code § 34-13-3-8. "A person may not initiate a suit against a governmental entity unless the person's claim has been denied in whole or in part." Ind. Code § 34-13-3-13. The governmental entity has ninety days to notify the claimant in writing of its approval or denial of the claim. Ind. Code § 34-13-3-11. The ITCA applies to employees of political

12

subdivisions, like Officer Morris.  *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind.Ct.App. 1999).  Once the defendant raises the issue of failure to comply with the notice provisions, the burden shifts to the plaintiff to prove compliance.  *Id.*

Here, Plaintiff admits that he did not wait the required ninety days before initiating this lawsuit, and that, under Indiana law, his state law tort claims must be dismissed without prejudice.  Nevertheless, Plaintiff argues that the court should consider these claims anyway because Officer Morris has not shown what benefit the state would receive by "pondering" his claims further outside this lawsuit.  This argument fails to take into consideration the clear and unambiguous language of the ITCA, which provides that a person "may not initiate" a lawsuit against a governmental entity unless the person's claim has been denied in whole or part.  The court therefore **GRANTS** Defendant's motion for summary judgment on Plaintiff's state law tort claims.

### III.  Conclusion

For the reasons explained above, the court hereby **GRANTS** Defendant's Motion for Summary Judgment (Docket # 26).


**SO ORDERED** this  27th   day of November 2007.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Donald G. Banta
INDIANA STATE ATTORNEY GENERAL
Donald.Banta@atg.in.gov

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@brown-tompkins-lory.com

Cory Christian Voight
INDIANA STATE ATTORNEY GENERAL
cory.voight@atg.in.gov